IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION FILE NO. |
| DEVIN VAN JACKSON (3) | 1:18-CR-15-AT-JKL-3 |

**NON-FINAL REPORT AND RECOMMENDATION**

This report and recommendation addresses the following pending motions filed on behalf of Defendant Devin Van Jackson ("Devin Jackson"): his Motion to Dismiss Count Four [Doc. 88], and his "Motion to Suppress the Fruit of the Search Warrant of His Abode and Any and All Statements Due to Fourth and Fifth Amendment Violations" [Doc. 89]. For the following reasons, the Court **RECOMMENDS** that the motions be **DENIED**.

I.  **Summary of Charges and Procedural Background**

On March 27, 2018, a federal grand jury seated in the Northern District of Georgia returned a twelve-count superseding indictment against Devin Jackson and four other defendants: Forrest Eugene Mays, Ryan Michael Jackson ("Ryan

Jackson"), Keenan Justin Jackson ("Keenan Jackson"), and Keith Garett Shelton.[1] [Doc. 31.] Devin Jackson is charged in Counts One through Four of the superseding indictment. Specifically, in Count One, he, Mays, Ryan Jackson, and Keenan Jackson, are charged with conspiracy distribute and possess with intent to distribute controlled substances, namely, cocaine, marijuana, and alprazolam (known commercially as Xanax), in violation of 21 U.S.C. §§ 841(a)(1) and 846. In Count Two, the same defendants are charged with possession with intent distribute cocaine, marijuana, and alprazolam in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 841(b)(1)(E)(2), as well as 18 U.S.C. § 2. In Count Three, they are charged with possession of at least one firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Finally, in Count Four, Devin Jackson is singly charged with possession of a firearm and ammunition while being an unlawful user of a controlled substance, namely marijuana, in violation of 18 U.S.C. § 922(g)(3).

Devin Jackson has moved to dismiss Count Four on the basis that 18 U.S.C. § 922(g)(3) is unconstitutionally vague. [Doc. 88.] He has also moved to suppress

---

[1] As of the date of this decision, Defendant Keenan Jackson has not been arraigned on the charges in the superseding indictment; an arrest warrant and writ of habeas corpus ad prosequendum remain outstanding. [*See* Docs. 42, 43.]

the search of his residence and subsequent statements he made to law enforcement on the grounds that the search warrant affidavit for the search of the residence failed to establish probable cause. [Doc. 89.] The government opposes both motions. [Docs. 92, 101.] Devin Jackson has not filed any reply, and time for filing reply briefs has expired; accordingly, the motions are now ripe for resolution.

## II.    Devin Jackson's Motion to Dismiss Count Four

In Count Four, Devin Jackson is charged with possession of a firearm "while being an unlawful user of a controlled substance," in violation of 18 U.S.C. § 922(g)(3), which makes it unlawful for any person "who is an unlawful user of or addicted to any controlled substance . . . to possess in or affecting commerce, any firearm or ammunition[.]" Devin Jackson urges the Court to dismiss Count Four on the grounds that § 922(g)(3) is unconstitutionally vague in violation of the due process clauses of the Fifth and Fourteenth Amendments. [Doc. 88.] Specifically, he argues that the term "unlawful user" is undefined and, therefore, fails to provide fair notice of what conduct is prohibited by the statute; as such, he maintains, § 922(g)(3) is unconstitutionally vague. [*Id.* at 2-3.] He further argues that § 922(g)(3) is unconstitutionally vague as applied to him because the charge appears to be based on his confession that he "previously used controlled substances,

3

without any indication of when that prior use was in relation to his possession of a firearm, how often it occurred, and if his use was ongoing." [*Id.* at 3.]

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (collecting cases). Importantly, for present purposes, "[e]xcept where First Amendment rights are involved, vagueness challenges must be evaluated in the light of the facts of the case at hand." *United States v. Marte*, 356 F.3d 1336, 1342 (11th Cir. 2004) (quoting *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002)); *see also United States v. Jernigan*, No. 1:14-cr-24-AT-JFK, 2015 WL 1781747, at *2 (N.D. Ga. Apr. 10, 2015), *adopted, id.* at *1. Thus, the Court must evaluate any vagueness challenge as an as-applied challenge.[2] In other words, the

---

[2] To the extent that Devin Jackson argues that he can lodge a facial challenge to 18 U.S.C. § 922(g)(3), such a challenge fails. When a party makes a facial challenge to a law, he or she "bears the burden of proving that the law could never be applied in a constitutional manner." *Am. Fed'n of State, Cty. & Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (quoting *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007)). In other words, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Here, Devin Jackson has not cited any case that has upheld a facial

issue before the Court is whether the language of § 922(g)(3) gave Devin Jackson "'fair notice' that his conduct was criminal." *United States v. Mozie*, 752 F.3d 1271, 1282-83 (11th Cir. 2014) (citing *United States v. Williams*, 553 U.S. 285, 304 (2008)).

Because Devin Jackson's vagueness challenge must proceed on an as-applied basis, his motion to dismiss is procedurally premature and should be denied without prejudice. Federal Rule of Criminal Procedure 12(b)(1) authorizes criminal defendants to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." "A motion is capable of pretrial determination 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." *United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016) (quoting

---

challenge to § 922(g)(3) on the grounds that the term "unlawful user" is unconstitutionally vague. To the contrary, the Eleventh Circuit has rejected a claim that § 922(g)(3) is unconstitutionally vague as applied to a defendant who used cocaine in the days and weeks leading to his arrest, explaining "[o]rdinary people would understand that this conduct constituted unlawful use of a controlled substance within the meaning of § 922(g)(3)." *United States v. Monroe*, 233 F. App'x 879, 881 (11th Cir. 2007) (citing Marte, 356 F.3d at 1342). Though *Monroe* involved only an as-applied challenge to § 922(g)(3), the Court's conclusion indicates that there are circumstances where § 922(g)(3) can be constitutionally applied to a defendant, thereby foreclosing a facial challenge to the statute.

*United States v. Covington*, 395 U.S. 57, 60 (1969)).  In contrast, "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)).

To resolve the present void-for-vagueness challenge at the present juncture, the Court would have to either make fact findings relating to the charged conduct prior to trial, or, alternatively, employ some sort of procedural mechanism similar to summary judgment, where the Court would view the facts in the light most favorable to one of the parties.  The Court is not authorized to do either of those things.  As just discussed, this Court may not dismiss an indictment based on a determination of facts that should be developed at trial.  Likewise, the Eleventh Circuit has held that "[t]here is no summary judgment procedure in criminal cases." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (citing *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).

Accordingly, the procedurally proper approach is for Devin Jackson to raise his vagueness challenge after the close of the government's case on a Rule 29 motion for judgment of acquittal.  *See, e.g., Mozie*, 752 F.3d at 1280 (considering void-for-vagueness challenge raised in motion for judgment of acquittal); *United*

*States v. Graves*, No. 1:13-CR-417-WSD-JSA, 2014 WL 2589428, at *10 (N.D. Ga. June 9, 2014), *adopted, id*. at *5 (deferring as-applied challenge to federal anti-kidnapping statute until after close of government's case-in-chief and "full resolution of the facts"). Indeed, courts across the country have held that resolution of a pretrial void-for-vagueness challenges to § 922(g)(3) should be deferred until trial. *See, e.g., Turner*, 842 F.3d at 605 (holding that a trial on the merits was needed to decide the motion to dismiss, and district court erred by ruling on it prior presentation of facts at trial); *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997) (holding that it was error for district court to consider as-applied vagueness challenge to § 922(g)(3) prior to trial); *United States v. Westley*, No. 3:17-cr-171 (MPS), 2018 WL 18362912, at *3 (D. Conn. April 17, 2018) (deferring as-applied challenge to § 922(g)(3) until trial); *United States v. Nguyen*, No. 13-CR-6044L, 2014 WL 1512030, at *15 (W.D.N.Y. Apr. 7, 2014), *report and recommendation adopted*, 2014 WL 1795045 (W.D.N.Y. May 6, 2014) (same); *United States v. Bastian*, 112 F. Supp. 2d 378, 380 (S.D.N.Y. 2000) (same).

For these reasons, the Court concludes that it would be premature to entertain an as-applied vagueness challenge to § 922(g)(3) before trial. Accordingly, it is recommended that Devin Jackson's motion to dismiss be denied without prejudice

7

to renew the challenge following the presentation of the government's evidence at trial.

### III.  Devin Jackson's Motion to Suppress

Devin Jackson separately moves to suppress evidence that the government seized pursuant to a search warrant for Devin Jackson's residence at 2327 Jones Road, Atlanta, Georgia (the "Jones Road Residence"), as well as any statements that he made that "were the result of the faulty warrant." [Doc. 89 at 1-3.] He argues that the affidavit supporting the search warrant did not adequately summarize the affiant's experience in drug enforcement operations and did not demonstrate probable cause to support the issuance of the warrant. [*Id.* at 1-3.]

#### A.  Background

On January 16, 2018, the government presented an application for a warrant to search the Jones Road Residence to United States Magistrate Judge Justin S. Anand. [Doc. 89-1.] The application was based on the attached affidavit of Special Agent Quenton K. Marable ("SA Marable") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). [*Id.* at 2-16 (the "Marable Aff.").]

SA Marable's affidavit began with a seven-paragraph recitation of his education, training, and experience as an ATF Special Agent. (Marable Aff. ¶¶ 1-7.) SA Marable stated that he graduated from college with a degree in criminal

justice, and served five years in the Army as an infantry officer, followed by six years as a Federal Air Marshal. (*Id.* ¶ 1.) In January 2016, he became a Special Agent with the ATF. (*Id.*) His training with the ATF included completing the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC"), as well as specialized training in the fields of firearms, explosives, and arson, and the federal laws and regulations pertaining thereto. (*Id.*) His then-present duties as a Special Agent with ATF included investigation and enforcement of violations of federal firearm and explosives laws and regulations. (*Id.*) In connection with those duties, he conducted and participated in complex federal investigations into firearm possession by prohibited persons and federal narcotics trafficking. (*Id.* ¶ 2.) He stated that he had personal familiarity with, and had used, many traditional investigatory methods, including visual and audio surveillance; interviewing informants, sources, and witnesses; and undercover operations. (*Id.*) He also learned about the techniques used to sell and distribute firearms and narcotics, through his training and investigatory experience, as well as through interviews of witnesses to and participants in those activities. (*Id.* ¶¶ 2-3.) He stated that through his training and experience he knew that narcotics distributors often keep firearms and ammunition in their homes and places of

narcotics distribution to protect themselves and the proceeds of their activities, and that narcotics traffickers hide proceeds and other evidence of their activities in their residences to conceal them from law enforcement.  (*Id.* ¶¶ 4-5, 7.)  He also knew through his training and experience that narcotics traffickers often keep records of their activities.  (*Id.* ¶ 6.)

In support of probable cause for the search of the Jones Road Resident, SA Marable's affidavit then summarized three controlled purchases of narcotics and firearms from persons at the Jones Road Residence, using information obtained from an ATF confidential informant (the "CI") in November and December 2017.  (Marable Aff. ¶¶ 12-20.)  SA Marable explained that the CI had provided accurate information for other ATF investigations and that information obtained from the CI had been used to obtain numerous other state and federal search warrants.  (*Id.* ¶¶ 11, 12.)  He stated that the CI had been used for over one hundred previous controlled purchases, and that the information provided by the CI in those investigations had proven reliable.  (*Id.* ¶ 12 n.1.)  He additionally explained that the CI was not working off any criminal charges and was not a convicted felon.  (*Id.*)  SA Marable stated that in November 2017, he and ATF Special Agent Daniel Abou-Jaoude met with the CI.  (Marable Aff. ¶ 11.)  The CI advised that Defendants

Ryan Jackson and Mays, both previously convicted felons, illegally possessed controlled substances and firearms at the Jones Road Residence. The CI also provided a phone number for Mays. (*Id.*)

The first controlled purchase occurred on November 11, 2017, when SA Marable directed the CI to travel to the Jones Road Residence to identify any drug activity and those individuals dealing in narcotics or firearms. (Marable Aff. ¶ 12.) The CI arrived at the residence, and as he approached the house, Ryan Jackson opened the door. (*Id.* ¶ 13.) The CI could see Mays in the residence seated at a small table containing a scale, baggies, and a substance that resembled marijuana, and Mays allegedly asked the CI, "how you doing?" (*Id.*) The CI stated that he[3] needed "powder" (a slang term for cocaine), and produced $100 in government-provided funds. (*Id.* ¶ 14.) Mays retrieved a clear plastic sandwich bag containing a substance that appeared to be cocaine, and gave the bag to the CI; Mays also provided his phone number to the CI, and invited him to return to the Jones Road Residence as needed for more cocaine. The CI then asked if a firearm was available for purchase, and another man in the house who identified himself as "Saint"

---

[3] The gender of the CI is not apparent from the application; thus, the Court uses the pronoun "he" simply as a matter of convenience.

11

responded affirmatively. During the conversation, the CI observed an AK-47-style rifle propped up against the wall of the room. The transaction was recorded by audio and video (although the rifle was not visible in the video). A field test indicated that the substance that the CI received was cocaine. (*Id.*)

According to SA Marable's affidavit, the second controlled purchase occurred on November 30, 2017, when the CI called Mays using the phone number that he had allegedly provided during the November 11 encounter. (Marable Aff. ¶ 15.) Mays allegedly stated that he had cocaine, which the CI could buy from him. At SA Marable's direction, the CI traveled to the Jones Road Residence, and once again purchased cocaine from Mays using government-issued funds. During the transaction, the CI observed Mays open a green backpack that appeared to contain pills, a substance resembling marijuana, and a bag of a substance resembling cocaine. The CI asked where "Saint" was, because the CI wanted to ask about buying a firearm from him; Mays allegedly responded that he was able to obtain firearms from a source and that another individual usually bought several from Mays. The transaction was again recorded on video and audio. (*Id.*)

The third controlled purchase took place on December 12, 2017, when the CI, again at SA Marable's direction, called Mays, who allegedly stated that he had

more cocaine available for purchase. (Marable Aff. ¶ 16.) The CI then traveled to the Jones Road Residence, and upon arrival, noted that there were two vehicles parked in front of the residence, which were not registered to either Mays or Ryan Jackson. An unknown man was standing outside the front door of the residence. The CI entered the residence, and observed four other unknown men in addition to Mays and Jackson. (*Id.*) Jackson was allegedly sitting on a chair near the entrance to the residence with a revolver in his lap and an AK-style rifle next to him. (*Id*. ¶ 17.) The CI also observed an unknown person sitting on a couch holding a clear plastic bag containing what appeared to be marijuana. He also saw another man handling what appeared to be marijuana on a table near the couch. An unknown woman also entered the residence carrying a bag that contained a substance that appeared to be marijuana. (*Id.*)

According to the CI, Mays then entered the room with cocaine. (Marable Aff. ¶ 18.) The CI also observed an unknown person appear from a staircase holding a bag containing what appeared to be cocaine. (*Id.*) Mays allegedly stated that he did not have the amount of cocaine that the CI wanted; however, the unknown person allegedly provided Mays with additional cocaine from the bag. (*Id.* ¶ 19.) Mays then allegedly gave the cocaine to the CI. (*Id.*)

13

The CI stated that he still wanted to buy a firearm, and asked Ryan Jackson about the revolver in his lap. (Marable Aff. ¶ 20.) Allegedly, Ryan Jackson stated that he would sell the firearm to the CI for $350.00. The CI gave Ryan Jackson the government-provided funds, and Jackson gave the CI the revolver. Both the cocaine and firearm transactions were recorded. The CI left the residence, and a field test indicated that the substance the CI had purchased was cocaine. (*Id.*)

Following the three encounters above, on January 4, 2018, the CI again called Mays at SA Marable's direction. (Marable Aff. ¶ 21.) Mays allegedly asked the CI if the CI was law enforcement, and told the CI that his uncle was doing "fed time." The CI responded that he wanted to buy some cocaine. Mays allegedly told the CI that the CI would have to pick Mays up at his residence and drive him to a location down the street from the Jones Road Residence. At SA Marable's instruction, the CI told Mays that the CI did not feel comfortable with that arrangement, and the call was terminated. (*Id.*)

In SA Marable's affidavit, he next summarized May's and Ryan Jackson's criminal histories, which included felony convictions by both for theft and burglary and by Jackson for possession of cocaine and marijuana. (Marable Aff. ¶¶ 22-23.) SA Marable also wrote that Mays had posted incriminating photographs of himself

14

on Instagram, including a photograph of him posing with a pistol and another of him posing with marijuana.  (*Id.* ¶ 24.)

### B. Applicable Standard

A judicial officer considering an application for a search warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him or her, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The Eleventh Circuit has "established the following guidelines for determining the validity of a warrant affidavit: (1) demonstration of a connection between the defendant and the location to be searched; (2) demonstration of a link between the location and criminal activity; and (3) demonstration of the informant's veracity and basis of knowledge."  *United States v. Davis*, 313 F.3d 1300, 1303 (11th Cir. 2002) (per curiam) (citing *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)).

"Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citation omitted).  Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to

magistrates in their probable cause determinations." *Id.* (citations omitted). Accordingly, a court reviewing the issuance of a search warrant simply decides "whether the evidence viewed as a whole provided a 'substantial basis' for the [m]agistrate's finding of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam); *see also Gates*, 462 U.S. at 238-39 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.") (internal quotation omitted). In evaluating the probable cause determination, moreover, "[g]reat deference is accorded to the magistrate's determination . . . ." *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991).

### C. A Substantial Basis Exists for Concluding that Probable Cause Existed to Uphold the Warrant

Devin Jackson argues that SA Marable's affidavit is defective, first, because his "experience is listed in a totally conclusory manner." [Doc. 89 at 1.] The Court disagrees. In his affidavit, SA Marable explained that he gained investigative experience by attending formal training at FLETC; receiving additional specialized training in the fields of firearms, explosives, and arson; and conducting and participating in complex federal investigations of firearms possession by prohibited persons and narcotics trafficking. (Marable Aff. ¶¶ 1-2.) SA Marable also stated

16

that he had conducted interviews with defendants, informants, witnesses, and participants in firearms and narcotics trafficking cases. (*Id.* ¶ 3.) He reported that he was familiar, as a result of his training and experience, with the habits and common behaviors of drug traffickers, including the fact that they kept contraband in their homes, maintained records of drug trafficking operations, and possessed drug paraphernalia. (*Id.* ¶¶ 4-7.) Contrary to Devin Jackson's argument otherwise, SA Marable's affidavit is sufficient to demonstrate that he had sufficient experience and training with respect to drug and firearm trafficking to provide a basis for his statements concerning the CI and the activities at the Jones Road Residence.

Devin Jackson's second argument, that the affidavit does not show probable cause, is also without merit. He pinpoints three purported problems with the affidavit: (1) that SA Marable's discussion of the CI's background is conclusory; (2) that SA Marable did not state when he learned from the CI that Defendants Ryan Jackson and Mays allegedly illegally possessed controlled substances and firearms; and (3) that affidavit does not state that the CI was searched for drugs by before SA Marable before the CI allegedly purchased drugs from the Jones Road Residence. [Doc. 89 at 2-3.] None of these arguments is persuasive. First, while it is true that SA Marable's assertions that the CI had been used in numerous other

17

ATF investigations and that information provided by the CI had led to numerous state and federal warrants was conclusory, *see United States v. Booker*, 131 F. App'x 234, 242 (11th Cir. 2005) (giving only "slight weight" to agent's allegation that a CI was reliable because the CI had provided accurate and reliable information in the past) (citing *United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir.1995)), that assertion should not be viewed in isolation, and the affidavit in this case was not otherwise totally devoid of corroboration or indicia of reliability beyond the first-hand knowledge of the informant.  Next, while the CI's tip that Ryan Jackson and Mays were allegedly engaging in drug trafficking at the Jones Road Residence was without a specific date, SA Marable thereafter deployed the CI on three separate controlled purchases, which confirmed the initial, undated tip.  Finally, though SA Marable does not state that affirmatively that he physically searched the CI prior to each of the three purchases, each transaction was recounted and recorded by the CI and each field test indicated that the CI obtained, in exchange for government-provided funds, substances that tested positive for cocaine.  The implication of Devin Jackson's argument—that the CI was liable to have cocaine in his possession and to simply manufacture a story regarding Jones Road Residence—is entirely undermined by these other corroborating facts in the

affidavit. Beyond all of this, ATF also confirmed that state probation records indicated that Mays's address of record was the Jones Road Residence, (Marable Aff. ¶ 22), and obtained photographs from social medial allegedly depicting Mays with a pistol and marijuana, (*Id.* ¶ 24). Based upon the totality of the information contained in the affidavit, there was a fair possibility that contraband or evidence of a crime would be found at the Jones Road Residence, and Judge Anand, the judicial officer who issued the warrant, had a substantial basis for concluding that probable cause existed.

Finally, Devin Jackson's argument that any statements should be suppressed is not well taken. His only basis for suppression is that the statements were the fruit of an illegal search of the Jones Road Residence. As just discussed, the Court rejects Devin Jackson's challenge to the warrant; thus, his motion to suppress statements fails as well.

Accordingly, it is recommended that Devin Jackson's motion to suppress be denied in its entirety.

### IV. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Devin Jackson's Motion to Dismiss Count Four [Doc. 88] be **DENIED WITHOUT PREJUDICE**, and that his "Motion to Suppress the Fruit of the Search Warrant of His Abode and

19

Any and All Statements Due to Fourth and Fifth Amendment Violations" [Doc. 89] be **DENIED**.

As there is nothing else before the undersigned relating to this Defendant, the Court **CERTIFIES** that this case is **READY FOR TRIAL**.[4]

IT IS SO RECOMMENDED this 5th day of September, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[4] Because matters pertaining this defendant's codefendants still are pending, the District Court is not required to place this case on the trial calendar at this time. 18 U.S.C. § 3161(h)(6).